DIANA M. RUTOWSKI (SBN 233878)
drutowski@orrick.com
MARIA N. SOKOVA (SBN 323627)
msokova@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:     +1 650 614 7401

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NREAL TECHNOLOGY LTD., NREAL, INC., AND SHENZHEN TAIRUO TECHNOLOGY CO., LTD.,<br><br>                    Plaintiff,<br><br>        v.<br><br>EPIC GAMES, INC,<br><br>                    Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMAND** |

COMPLAINT FOR DECLARATORY
JUDGMENT
No. _____

Plaintiffs Nreal Technology Ltd. and Nreal, Inc. (separately or together, "Nreal"), and Shenzhen Tairuo Technology Co., Ltd. ("Tairuo") (collectively with Nreal, "Plaintiffs") bring this action for declaratory judgment against Defendant Epic Games, Inc. ("Epic" or "Defendant").

## NATURE OF ACTION AND RELIEF SOUGHT

1. Nreal is a hardware company focused on making user-friendly lightweight mixed reality glasses business. Its business was founded in China in 2017, and its product is called the Nreal Light. The Nreal Light is designed to look and feel like regular sunglasses. It is lightweight, comfortable, and sports a wide field of view. The Nreal Light has received critical acclaim since it was shown at the 2019 Consumer Electronics Show (CES) in Las Vegas where it was awarded Engadget's "Best of CES Award" for "Best Startup"—the editors "were impressed by the crisp, vivid images the headset could produce… Nreal managed to squeeze some incredibly complex components into a headset that could pass for an (almost) normal, comfortable pair of sunglasses." Nreal was the first Chinese startup to win this award since the award's inception. Nreal has not launched its Nreal Light product for consumer sales in the United States.

2. The name Nreal was coined by its founder who was inspired by the idea of an "Nth" reality—"Nth" as a reference to the "latest" or "utmost" reality that a user can experience. Nreal's holding company, Tairuo, owns U.S. Application No. 87/755,578 for the mark nreal (the "Nreal Mark") for various goods and services in classes 9, 35, 38 and 42. Tairuo also owns applications and registrations in Europe, Japan, and China for the Nreal Mark for goods and services in the same classes.

3. In December 2018, Defendant Epic Games filed a trademark opposition proceeding against Nreal's U.S. trademark application alleging that Tairuo's registration of the Nreal Mark is likely to cause confusion with Epic's UNREAL, UNREAL ENGINE, UNREAL TOURNAMENT, and UNREAL CHAMPIONSHIP marks ("the UNREAL Marks"), used in connection with software for video game development.

4. Following Epic's filing of the opposition, Epic and Plaintiffs attempted to resolve this dispute. However, on May 14, 2021, without any prior warning or notice, Epic filed a

-1-

COMPLAINT FOR DECLARATORY JUDGMENT
No. _____

complaint against Tairuo in the Eastern District of North Carolina, where Tairuo has no business presence, alleging that Tairuo's use of the Nreal Mark in connection with the Nreal Light glasses would cause confusion with Epic's UNREAL Marks, infringe Epic's marks, and violate North Carolina's Unfair and Deceptive Trade Practices, and asking that Tairuo's trademark application be refused. Upon information and belief, Epic filed its complaint in North Carolina—its "hometown venue" where it is headquartered—in order to gain an unfair advantage based on its significant presence in that state in litigation against a foreign Chinese company. Due to its lack of contacts with the forum, Tairuo contests personal jurisdiction in North Carolina.

5. Accordingly, this is a civil action for declaratory relief to vindicate the rights of Plaintiffs to register and use the Nreal Mark. Plaintiffs seek through this lawsuit declarations that use of the Nreal Mark does not create a likelihood of confusion, or otherwise unlawfully violate Epic's rights under the Lanham Act or state law.

**THE PARTIES**

6. Plaintiff Nreal Technology Ltd. is a Hong Kong corporation having its principal offices at 15th Floor, Zhonghang Plaza A2, 43 North 3rd Ring West Road, Haidian District, Beijing 100098, People's Republic of China.

7. Plaintiff Nreal, Inc., is a California corporation having its registered offices at 15303 Top of the Hill Ct., Los Gatos, California.

8. Plaintiff Shenzhen Tairuo Technology Co., Ltd. is a China corporation having its principal offices at 15th Floor, Zhonghang Plaza A2, 43 North 3rd. Ring West Road, Haidian District, Beijing 100098, People's Republic of China.

9. Defendant Epic Games, Inc. is a Maryland corporation with its principal place of business in Cary, North Carolina. Epic Games maintains offices in Larkspur, California and San Francisco, California, both located in the Northern District of California, and posts employment openings in this District. Epic Games conducts substantial business in this District and has filed several lawsuits in this District in the last few years.

**JURISDICTION AND VENUE**

10. This is an action for declaratory relief arising under the Lanham Act, codified at

U.S.C. § 1051 et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

11.     This Court has personal jurisdiction over Epic because its continuous corporate operations within California are sufficiently purposeful and substantial to justify suit against it on any cause of action in this State.  Further, Epic has sufficient minimum contacts with the State of California and this suit arises out of or relates to those contacts.  Epic has purposely availed itself of the benefits and protections of California law, including by registering to do business in California, and doing business in connection with its alleged UNREAL Marks in California, such that the exercise of jurisdiction over Epic would comport with due process requirements.

12.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district, and pursuant to 28 U.S.C. § 1391(b)(1) and 1391(d) because Defendant resides in this district.

## FACTUAL ALLEGATIONS

### A.     Nreal's Business and Brand.

13.     Nreal is a hardware manufacturer, and its business was founded in China in 2017.  Nreal's product, the Nreal Light, is a hardware device—user friendly, lightweight mixed reality glasses designed to look and feel like regular sunglasses.  Since Nreal showed the product in January 2019 at the Consumer Electronics Show (CES) in Las Vegas, the Nreal Light has received praise for its high-quality visual capabilities and lightweight, user-friendly design, and was the first Chinese startup to win Engadget's "Best of CES Award" for "Best Startup."  In fact, Nreal Light has been critically acclaimed for its wearability and its ability to integrate high-definition images over physical spaces.

**Nreal Light**



14. The Nreal Light mixed reality glasses are sleek and powerful consumer glasses. Nreal Light allows the wearer to experience photos, videos, and apps in a mixed reality space, augmented by spatial computing cameras, dual microphones, and integrated speakers for spatial sound. With the smart glasses, users can experience their favorite apps in a completely new way in a mixed reality environment. The glasses show digital content like a large transparent screen, while at the same time allowing the users to see, move around, and interact with their surroundings.

15. The name "Nreal" is evocative of and inspired by references to an "Nth reality." "Nth" typically designates the latest or the utmost in a long series. This is also consistent with the meaning of the mark in Chinese, where "n" is added before a noun to indicate many or multiple. Thus, the Nreal Light glasses allow users to experience multiple realities or an "Nth reality"—an augmented or mixed reality experience.

16. In 2020, Nreal Light glasses entered consumer markets in Korea and Japan. Earlier in 2021, Nreal expanded its markets to Spain and Germany through a partnership with the region's two leading carriers.

17. Nreal offers software for use in connection with its Nreal Light glasses under a couple of different brands. Nreal's 3D user interface system designed for Nreal's brand of mixed reality glasses, is called Nebula. Nebula projects content onto an interactive virtual space, while retaining familiar smartphone interface features that makes navigating Nreal's mixed reality glasses intuitive. Nreal also offers a software development kit for cutting edge companies and

1  developers to integrate their offerings for use on Nreal's Light glasses that is called NRSDK.

2  18.  Nreal's target customers for the Nreal Light are users who are interested in adding mixed reality to their enjoyment of digital content. Such prospective customers take care in their purchasing decisions and are not likely to be confused in any respect about who they are dealing with when seeking to purchase mixed reality glasses offered by Nreal. Furthermore, there are limited companies in the augmented reality, mixed reality, and virtual reality headset market, and the products themselves are at a higher price point, making consumers and developers more discerning as to their source.

B.  **Epic's Business and Marks.**

19.  Defendant Epic describes itself as a software company. Epic creates digital content and publishes software, including the Unreal Engine, which is a game engine (i.e. video game development tools) first showcased in a 1998 shooter game called Unreal. Unreal Engine is available to third-party software developers to create content for use in games and other applications. Epic's Unreal Tournament and Unreal Championship are first-person arena shooter video games created using the Unreal Engine. Epic also offers the Unreal Engine Marketplace, an e-commerce platform for developers to create and use with Unreal Engine projects.

20.  Unlike "Nreal," "unreal" is an actual word with meaning in the English language. Indeed, Epic uses "unreal" descriptively, promoting on its Unreal Engine website that its Unreal Engine tools can be used by developers to "Make something Unreal." *See* www.unrealengine.com. Epic does not use its UNREAL Marks in connection with augmented or mixed reality glasses or any similar hardware devices.

21.  Epic uses its UNREAL Marks in a stylized form that differs significantly from the look and feel of the nreal mark. For example, the UNREAL Mark is stylized as indicated below:



COMPLAINT FOR DECLARATORY JUDGMENT
No. _____

C. **The Parties' Dispute.**

1. **Epic's Trademark Opposition.**

22. On December 12, 2018 Epic filed Trademark Opposition No. 91245247 before the Trademark Trial and Appeal Board against Tairuo's 87/755,578 application in the United States alleging that Tairuo's registration of the Nreal mark is likely to cause confusion with respect to Epic's UNREAL, UNREAL ENGINE, UNREAL TOURNAMENT, and UNREAL CHAMPIONSHIP marks. The U.S. opposition proceeding has been suspended by the parties repeatedly as they engaged in settlement discussions. Epic has also sought to oppose Tairuo's applications for the Nreal Mark in Europe, South Korea, and China. In at least two disputes thus far, Epic's opposition was not successful: Tairuo's applications in China were approved over Epic's opposition, with the China Trademark Office finding that "Nreal" does not conflict with Epic's marks in UNREAL, UNREAL CHAMPIONSHIP, or UNREAL TOURNAMENT.

2. **Epic's Infringement Lawsuit.**

23. After more than a year of settlement discussions between the parties in the United States, Epic filed an infringement action against Tairuo on May 14, 2021 in the Eastern District of North Carolina, where Epic is based but where neither Tairuo, nor Nreal for that matter, targets any business related activities.

24. Epic alleges that the Nreal Mark is likely to cause confusion amongst relevant consumers and thereby infringes Epic's UNREAL Marks.

25. Epic further alleges that the Nreal Mark is likely to cause confusion amongst relevant consumers and constitute a false designation of origin, affiliation, and/or sponsorship, and a false designation or representation that wrongfully and falsely designates Nreal's products and those of Epic as originating from the same source, and falsely suggests that the two companies are associated, affiliated, or connected with one another. In contrast to Epic's allegations, Epic and Nreal target different segments of the market, market to different consumers, and use of their respective marks is not likely to cause any confusion to customers in their respective markets. Indeed, Epic has pointed to no incidents of actual confusion in its complaint or otherwise.

26. Accordingly, Plaintiffs file this declaratory judgement action to vindicate their right to use and register the Nreal Mark.

27. Not only are the marks different—one a common word and the other coined by Nreal—but the parties' respective fields of use are different and distinct within a crowded marketplace. Plaintiffs are in the field of providing mixed reality glasses (i.e. hardware devices) and incidental software related to those products branded under different marks. Epic, on the other hand, is a developer of video games and related software for game development. Although it may be argued that both parties offer their goods and services in connection with computer hardware and software products at the most general level, there is no further similarity between their fields of use—video game software and mixed reality hardware devices are distinct fields. Nor are the goods and services offered under the respective marks themselves sufficiently related such that confusion is likely.

## COUNT I

**Declaratory Judgment of No Likelihood of Confusion,
Trademark Infringement, or Unfair Competition
(15 U.S.C. §§ 1114(1), 1125(A); California Law; North Carolina Unfair and Deceptive
Trade Practices (N.C. Gen. Stat. § 75-1.1, et seq.); Common Law)**

28. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs.

29. Likelihood of confusion is an essential element of claims brought pursuant to 15 U.S.C. §§ 1114(a) and 1125(a), which Epic must establish in order to succeed on a claim brought pursuant to those sections or under analogous state law.

30. Defendant Epic claims that Tairuo's use and application for registration of the Nreal Mark as alleged herein is likely to cause confusion with respect to the UNREAL Marks owned by Epic.

31. Plaintiffs deny that use and registration of the Nreal Mark is likely to cause confusion with respect to Epic's alleged UNREAL Marks among relevant consumers as to source or origin, or otherwise suggest that the two companies or their products or services are associated, affiliated, or connecter with one another. Plaintiffs' use and registration of the Nreal Mark is not

in violation of any rights Defendant may have in its alleged UNREAL Marks under the Lanham Act or California trademark law.

32. Plaintiffs deny that their use and registration of the Nreal Mark is likely to mislead through false designation of origin, affiliation, sponsorship, false or misleading description of fact, or false or misleading representation with respect to Epic's alleged UNREAL Marks. Plaintiffs' use and registration of the Nreal Mark is not in violation of any rights Epic may have in marks under the Lanham Act or California trademark law.

33. Plaintiffs deny that use and registration of the Nreal Mark creates any unfair competition with respect to the alleged UNREAL Marks. Plaintiffs' use and registration of the Nreal Mark is not infringing, does not cause unfair competition, confusion, or deceive customers as to source or origin and is not in violation of any rights Defendant may have under California, North Carolina, or Common Law Unfair Competition.

34. Plaintiffs further deny that use and registration of the Nreal Mark is causing Epic harm in North Carolina or elsewhere in the United States.

35. Consequently, there is an actual and substantial controversy between Plaintiffs and Epic regarding Plaintiffs' rights to use and register the Nreal Mark. In order to resolve the legal and factual issues raised by Epic and to afford relief from the controversy which Epic's assertions have precipitated, Plaintiffs are entitled to a declaratory judgment confirming their rights pursuant to 28 U.S.C. § 2201.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court grant the following relief:

A. Judgment in Plaintiffs' favor on each count;

B. A declaration from the Court that Plaintiffs' use and registration of the Nreal Mark does not and is not likely to cause confusion as to source with Defendant Epic or Epic's UNREAL Marks.

C. A declaration from the Court that Plaintiffs' use and registration of the Nreal Mark does not violate any rights of Defendant Epic in its UNREAL Marks.

D. A declaration from the Court that Plaintiffs' use and registration of the Nreal Mark

does not cause Epic any harm.

E. Reasonable attorneys' fees and the costs of suit.

F. Such other relief as the Court deems just and proper.

Dated: July 19, 2021

DIANA M. RUTOWSKI
MARIA N. SOKOVA
Orrick, Herrington & Sutcliffe LLP

By:    */s/ Diana M. Rutowski*
        DIANA M. RUTOWSKI
        Attorneys for Plaintiffs