DIANA M. RUTOWSKI (SBN 233878)
drutowski@orrick.com
MARIA N. SOKOVA (SBN 323627)
msokova@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:   +1 650 614 7400
Facsimile:    +1 650 614 7401

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NREAL TECHNOLOGY LTD., NREAL, INC., AND SHENZHEN TAIRUO TECHNOLOGY CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>Defendant. | Case No. 5:21-cv-05537-BLF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT OR TRANSFER**<br><br>Date:    February 24, 2022<br>Time:   9:00 A.M.<br>Ctrm:    3, 5th Floor<br>Judge:  Honorable Beth Labson Freeman |

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................... 2

    A. Nreal Entities and Nreal Light. ................................................................................ 2

    B. Epic and Unreal Engine. ........................................................................................... 2

    C. History of the Trademark Dispute Between the Parties. .......................................... 3

        1. Epic Opposes Tairuo's Trademark Application with the Trademark Trial and Appeal Board. ................................................................. 3

        2. Epic Files an Infringement Suit in the Eastern District of North Carolina. .................................................................................................. 4

        3. Plaintiffs File This Declaratory Judgment Action in the Northern District of California. ............................................................................ 5

III. ARGUMENT ........................................................................................................................ 6

    A. The Court Has Broad Discretion To Deny Epic's Motion. ...................................... 6

    B. This Court Should Not Dismiss But Await Determination Of The Jurisdictional Motion In North Carolina. ............................................................... 6

    C. Likewise, This Case Should Not Be Transferred. .................................................... 9

        1. Epic fails to meet threshold requirements for transfer under 28 U.S.C. § 1404(a)—namely, establishing personal jurisdiction. .............. 9

        2. The convenience factors favor litigating in this district. ............................. 9

            a. Plaintiffs' Choice of Venue ............................................................. 10

            b. Convenience of the Parties .............................................................. 11

            c. Convenience of the Witnesses ........................................................ 11

            d. Interests of Justice ........................................................................... 12

    D. Epic Improperly Attempts to Incorporate Arguments from North Carolina Into This Action Through Judicial Notice. ............................................................. 12

IV. CONCLUSION ................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                       **Page(s)**

*Alltrade, Inc. v. Uniweld Prod., Inc.*,
  946 F.2d 622 (9th Cir. 1991) .................................................................................. 6, 7, 8

*In re Bozic*,
  888 F.3d 1048 (9th Cir. 2018) ......................................................................................... 9

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) .......................................................... 13

*Callaway Golf Co. v. Corp. Trade Inc.*,
  No. 09CV384 L(POR), 2010 WL 743829 (S.D. Cal. Mar. 1, 2010) ........................... 9, 10, 11

*Conde v. Open Door Mktg., LLC*,
  223 F. Supp. 3d 949 (N.D. Cal. 2017) ........................................................................... 14

*Guthy-Renker-Fitness L.L.C. v. Icon Health & Fitness Inc.*,
  No. 97-7681 LGB (EX), 1998 WL 207855 (C.D. Cal. Mar. 16, 1998) ........................... 10

*Harris v. R.J. Reynolds Vapor Co.*,
  No. 15-CV-04075-JD, 2016 WL 6246415 (N.D. Cal. Sept. 30, 2016) ........................ 13, 14

*Inherent.com v. Martindale-Hubbell*,
  420 F. Supp. 2d 1093 (N.D. Cal. 2006) ........................................................................... 6

*Jefferson Ward Stores, Inc. v. Doody Co.*,
  560 F. Supp. 35 (E.D. Pa. 1983) ..................................................................................... 7

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................................................................................. 13, 14

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) ............................................................................................. 6

*SMIC, Americas v. Innovative Foundry Techs. LLC*,
  473 F. Supp. 3d 1021 (N.D. Cal. 2020) ......................................................................... 10

*Steelcase, Inc. v. Haworth, Inc.*,
  No. CV 96-1364-JGD-AJWX, 1996 WL 806026 (C.D. Cal. May 15, 1996) ................. 11

**Statutes and Rules**

28 U.S.C.
   § 1404(a) ................................................................................................. 6, 9, 10

Fed. R. Civ. P.
   Rule 4(d)(3) ..................................................................................................... 5
   Rule 4(k)(2) ..................................................................................................... 8
   Rule 12(b)(6) ................................................................................................. 13

## I. INTRODUCTION

In an effort to resolve the longstanding trademark dispute between these parties in an appropriate forum, Nreal Technology Ltd., Nreal, Inc. (separately or together, "Nreal") and Shenzhen Tairuo Technology Co., Ltd. ("Tairuo") (collectively, "Plaintiffs") filed this action for declaratory judgment with this Court. Defendant Epic Games Inc. ("Epic") filed a separate action against Tairuo in the Eastern District of North Carolina, but Tairuo is not subject to personal jurisdiction there as Tairuo argued in a motion to dismiss that has been fully briefed and before that court. Here, Epic attempts to paint Plaintiffs' good faith effort to bring the dispute into a proper jurisdiction as "forum shopping." However, that is not the case. In reality, the parties in this case have the same goal—resolution of the underlying trademark dispute—but Plaintiffs seek to have the issues litigated before a court that has jurisdiction over all necessary parties and authority to make such a determination.

Defendant filed a Motion to Dismiss in this action based on the first-to-file rule because this action was filed after Epic filed its Complaint in the Eastern District of North Carolina. *See* Sept. 27, 2021 Def.'s Mot. to Dismiss Compl. or Transfer ("Mot."), Dkt. No. 22 at 5–6. In the alternative, Defendant argues that the case should be transferred to the Eastern District of North Carolina. *See id*. at 7–8. However, neither should occur here because this case should be heard in this district, not in North Carolina. This Court should stay this case pending a decision on the motion to dismiss in North Carolina rather than dismiss this action or transfer it to the Eastern District of North Carolina. As described in this Opposition, the North Carolina action is inherently flawed because Tairuo (and Nreal) are not subject to personal jurisdiction in the state of North Carolina.[1] Given the possibility that the North Carolina action will be dismissed and that the balance of the relevant convenience factors weighs in favor of litigating this dispute in California, this case should not be dismissed and should not be transferred outside this district.

---

[1] With its Motion to Dismiss, Epic also filed a Request for Judicial Notice of the Eastern District of North Carolina briefing. This Request is improper as set forth below.

## II. FACTUAL BACKGROUND

### A. Nreal Entities and Nreal Light.

Nreal is a hardware company focused on making user-friendly lightweight mixed reality glasses. Compl. ¶ 13. The business was founded in China in 2017 and has its principal place of business in that country. *Id.* ¶ 13. Its main product is Nreal Light, lightweight sunglasses that are designed to look and feel like regular sunglasses while incorporating augmented reality tools including displaying digital content like a large transparent screen allowing users to experience photos, videos, and apps through sight, movement, and interaction in a mixed reality setting. *Id.* ¶¶ 13–14. This product has been successfully marketed and sold in a number of countries, including Korea, Japan, Spain, and Germany, but has not yet launched to customers in the United States. *Id.* ¶¶ 1, 16.

Tairuo is a Chinese company that is part of the Nreal corporate structure but acts primarily as a holding company—it is the named applicant for NREAL trademarks and Nreal's website nreal.ai. *See* Declaration of Chi Xu in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss Complaint or Transfer ("Xu Decl.") at ¶ 2. It does not engage in the operation of the Nreal business. *Id.*

In preparation to launch its business in the United States, Nreal incorporated Nreal, Inc. in the state of California in January 2021. *Id.* ¶ 3.a. This is Nreal's most significant contact with the United States; it has attended some conferences in the United States, including in this jurisdiction in the past, but there is otherwise no sustained presence (including property, employees, or any other physical ties) anywhere other than in California due to Nreal, Inc.'s incorporation. Compl. ¶ 23; Xu Decl. ¶ 3. It has no substantial contacts with North Carolina. *See* Xu Decl. ¶ 4.

### B. Epic and Unreal Engine.

Defendant Epic Games, Inc. ("Epic") is a Maryland company with a principal place of business in Cary, North Carolina. Compl. ¶ 9. Epic describes itself as a software company that offers a wide variety of products, including a suite of video game development tools offered in one product called the Unreal Engine. *Id.* ¶ 19. Unreal Engine is available to third-party software developers to create content for use in games and other applications and has developed over time

to include additional products, including the "Unreal Engine Marketplace," an e-commerce platform for developers to create and use with Unreal Engine products. *Id.*

Despite having its headquarters in North Carolina, Epic has offices all over the world. *Id.* ¶ 9. In fact, Epic has two offices in this district: one in Larkspur, California, and one in San Francisco. *Id.* Epic's willingness to litigate in this district is demonstrated by the fact it has opted to file lawsuits in this district before. *See, e.g.*, *Epic Games, Inc. v. Apple Inc.*, No. 4:20-CV-05640-YGR (N.D. Cal. Aug. 13, 2020).

### C. History of the Trademark Dispute Between the Parties.

#### 1. *Epic Opposes Tairuo's Trademark Application with the Trademark Trial and Appeal Board.*

On January 15, 2018, Tairuo filed an intent-to-use trademark application for NREAL for goods and services related to Nreal's augmented reality glasses with the Patent and Trademark Office, application 87/755,578. On December 12, 2018, Epic filed Trademark Opposition No. 91245247 before the Trademark Trial and Appeal Board ("TTAB") against that application.[2] Compl. ¶ 22. Epic alleged this mark was likely to cause confusion with Epic's UNREAL and UNREAL ENGINE marks (among others related to the same offerings). *Id.* The opposition proceeding continued for over two years but was suspended for much of that time while the parties engaged in settlement discussions. *Id.* ¶¶ 22–23. The action was stayed indefinitely when Epic filed its action in federal district court. *Id.* ¶ 23.

---

[2] Epic has filed similar oppositions against the Nreal Mark in other jurisdictions, including Europe, South Korea, and China. These have been mostly unsuccessful oppositions. Most notably, the China National Intellectual Property Administration rejected Epic's argument and approved the Nreal Mark for registration, finding that "Nreal" does not conflict with Epic's UNREAL, UNREAL CHAMPIONSHIP, or UNREAL TOURNAMENT marks.

### 2. *Epic Files an Infringement Suit in the Eastern District of North Carolina.*

On May 14, 2021, Epic instituted a trademark infringement action against Tairuo in the Eastern District of North Carolina, asserting that the NREAL mark will be confused with Epic's UNREAL mark.  Epic also asserts that use of the NREAL mark constitutes a false designation of origin, affiliation, and/or sponsorship, and the use of the NREAL mark will suggest to consumers that the Nreal and Epic are associated, affiliated, or connected with each other.  Compl. ¶¶ 23-25.

In fact, Nreal's use of the NREAL mark is not likely to cause confusion because the marks are different, Epic and Nreal target different segments of the market, market to different consumers, and use their respective marks in connection with distinguishable goods and services in their respective markets.  *Id*. ¶ 25.  Despite Epic's global presence and Nreal's several product launches in different countries outside of the United States, Epic has made no allegation and has provided no evidence of actual confusion in the marketplace at any point in the dispute in the United States or outside the United States.  Moreover, not only are the markets distinguishable, but the marks themselves are, too.  Unlike "Nreal," a term coined by one of Plaintiffs' founders inspired by references to an "Nth reality," "unreal" is an actual word with a clear meaning in the English language, which Epic uses descriptively in its advertising.  *Id*. ¶¶ 15, 20; *see, e.g.*, https://web.archive.org/web/20210323052038/https://www.unrealengine.com/en-US/ (indicating Epic has promoted its products by stating developers can use the Unreal Engine tools to "Make something Unreal."), *last visited* Oct. 12, 2021.

Most importantly for purposes of the North Carolina action, Epic's claims in the Eastern District of North Carolina suffer another flaw: they cannot be brought against Tairuo in that district because the State of North Carolina lacks jurisdiction over it.  Compl. ¶ 23; *see* Xu Decl. at ¶ 4.  Plaintiffs' only potentially meaningful connection with the United States, if anywhere, would be in California where Nreal, Inc. is incorporated.  Xu Decl. at ¶ 3.  Tairuo has no officers, directors, or employees in North Carolina; no corporate or physical presence in North Carolina; no real property, bank accounts, phone numbers, or addresses in North Carolina; and does not engage in advertising or marketing that specifically targets North Carolina.  *Id*. at ¶ 4.  As a result,

Tairuo filed a motion to dismiss Epic's Complaint for lack of personal jurisdiction, and, in the alternative, for that action to be transferred to the Northern District of California, where Tairuo and the other Nreal entities relevant to this dispute have subjected themselves to this Court's jurisdiction.

### 3. *Plaintiffs File This Declaratory Judgment Action in the Northern District of California.*

On July 19, 2021, Plaintiffs instituted this action in the Northern District of California—the court with proper jurisdiction—to resolve the dispute. *See* Compl. Plaintiffs seek a Declaratory Judgment of no likelihood of confusion, no trademark infringement, nor unfair competition between the Nreal Mark and Epic's UNREAL marks. *Id.* ¶¶ 28–35.

On September 27, 2021, Epic filed its motion to dismiss this action, asserting that this action should be dismissed under the first-to-file rule because they filed an action in the Eastern District of North Carolina before Plaintiffs filed this action in this district. *See* Mot. at 5–6. Epic further asserts that if this action is not dismissed, it should be transferred to the Eastern District of North Carolina. *Id.* at 7–8. Nreal and Tairuo hereby oppose that motion.

Epic attempts to cast aspersions on Tairuo in this litigation based on the timing and method in which Tairuo waived of service in the Eastern District of North Carolina action and what Epic perceives to be the connection between this waiver and the filing of this action. Mot. at 4. Those attacks not only elevate form over substance but are misplaced. Plaintiffs have consistently abided by the Federal Rules of Civil Procedure in this action and in the North Carolina action. For one, Fed. R. Civ. P. 4(d)(3) grants 90 days "to the *defendant* outside any judicial district of the United States," and Tairuo is located in China (emphasis added). For another, Tairuo's local North Carolina counsel's inquiry to the clerk regarding whether 60 days was correct or whether the overseas defendant extended the response time to 90 days was not an *ex parte* communication with the court as Epic contends. Finally, Epic's sole purpose in this line of argument is to sling mud at Plaintiffs: Epic seeks no remedies from the North Carolina court for the one-day difference between the alleged deadline and when Tairuo filed its motion to dismiss, and in fact, Epic received an extension of time to respond to Plaintiffs' Complaint here.

*See* Stipulation to Extend Time to Respond to Complaint, Dkt. No. 21.

## III.  ARGUMENT

Epic's motion to dismiss this action should be denied because it would not be appropriate or prudent to dismiss this action at this stage since a motion to dismiss based on lack of personal jurisdiction is pending in the North Carolina action.  It would be equally improper to transfer this action to the Eastern District of North Carolina.  Considering the convenience factors—as this court is entitled to do while determining whether and how to apply the first-to-file rule—this jurisdiction is more convenient for the parties and potential witnesses to these issues, and the interests of justice favor litigating these issues in this district.

### A.     **The Court Has Broad Discretion To Deny Epic's Motion.**

Under the first-to-file rule, a district court "may transfer, stay or dismiss the second action if it determines that it would be in the interest of judicial economy and convenience of the parties." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (citation omitted).  "The most basic aspect of the first-to-file rule is that it is discretionary" *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991);  it is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

### B.     **This Court Should Not Dismiss But Await Determination Of The Jurisdictional Motion In North Carolina.**

This Court should exercise its discretion to deny Epic's motion to dismiss and await resolution of Tairuo's pending motion to dismiss for lack of jurisdiction and transfer in the Eastern District of North Carolina.  Under applicable law, it would not be appropriate to dismiss this case while the jurisdictional issue is pending.  And the Federal Rules of Civil Procedure do not allow transfer to a district that does not have jurisdiction over the subject matter and all parties to the litigation.  *See* 28 U.S.C. § 1404(a).  Finally, convenience and the interests of justice favor awaiting determination of the North Carolina court rather than dismissing or transferring to the Eastern District of North Carolina.  As such, the only appropriate conclusion is to stay this

action pending resolution of the jurisdictional question in North Carolina.

First, courts in this jurisdiction have found that dismissing the second-filed action while the viability of the first-filed action is in question is improper. *See Alltrade, Inc.*, 946 F.2d at 627 ("[W]here the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed."). This is particularly true in the context of questionable jurisdiction in the court of the first-filed action. "[T]he fact that [the first-filed court's] jurisdiction over [the defendant there] is questionable weighs against dismissing the instant litigation." *Id*. In fact, other districts have taken this a step further, finding that where jurisdiction is clearly questionable in the first-filed action, the court of the second-filed action can proceed with the litigation. For example, in *Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35 (E.D. Pa. 1983), the court found that since there was a significant possibility the court of the first-filed action did not have personal jurisdiction over all the parties, the court of the second-filed action was actually the first court to obtain jurisdiction over the parties and issues and was thus entitled to proceed with the litigation. *Id.* at 36.

Similar to these cases, this action should not be dismissed because the Eastern District of North Carolina lacks jurisdiction over Tairuo. Tairuo has a pending motion to dismiss for lack of personal jurisdiction in the Eastern District of North Carolina because Tairuo lacks adequate connection with North Carolina to establish either general or specific jurisdiction. *See Epic Games, Inc., v. Shenzhen Tairuo Tech. Co.*, No. 5:21-CV-00224-FL (E.D.N.C. May 14, 2021). Other than conclusory legal statements such as Tairuo "infringed Epic's UNREAL Marks with knowledge that doing so would harm Epic in North Carolina," Mot. at 7, Epic alleged no specific contacts Tairuo has with the state of North Carolina, and in fact, those contacts do not exist. Xu Decl. ¶ 4. The minimal activity Epic identifies in its Complaint, including social media posts and advertisements, are not specifically targeted at North Carolina. *Id*. ¶ 4.c. No Tairuo employee has ever worked or lived in North Carolina and there is no Tairuo property in North Carolina. *Id*. ¶ 4.a.–4.b. Epic has not alleged facts sufficient for the Eastern District of North Carolina to confer jurisdiction on Tairuo (and in reality, those facts do not exist). Compl. ¶ 23; *see* Xu Decl. ¶ 4.

Epic attempted to introduce new facts in its Opposition to support their jurisdiction in North Carolina, but they are equally unavailing. Examples of this information include a Tairuo employee signing the Unreal Engine End User License Agreement (a clickwrap contract made between Tairuo's Chinese employee and Epic's Swiss corporate relative) and "communicated with Epic in North Carolina" by defending against Epic's Opposition proceeding and related settlement discussions. Mot. at 7; *see* Xu Decl. ¶ 4.d. Neither of these illustrate that Tairuo established contacts or purposefully availed itself of the laws of *the state of North Carolina*, as is required to confer jurisdiction.

Finally, Epic contends the North Carolina courts have jurisdiction over Tairuo through Fed. R. Civ. P. 4(k)(2), under which a federal district court can exercise jurisdiction over a foreign defendant who "[is] **not subject to jurisdiction in any specific state**" courts of general jurisdiction. Mot. at 7–8 (emphasis added). However, Tairuo *is* subject to the jurisdiction of another state, California, which is why Plaintiffs seek to litigate this dispute here. Since January 2021, Nreal, Inc. is located and registered in California; Nreal employees have attended conferences and meetings in California; and Nreal entities filed this action, subjecting themselves to this Court's jurisdiction. *See* Compl. ¶ 7; Xu Decl. ¶ 3.

Based on these facts, this Court should not dismiss this action under the first-to-file rule. Notably, Plaintiffs are not seeking a determination on this jurisdictional issue from this Court; Plaintiffs agree with Epic that "this jurisdictional question is one that under principles of judicial efficiency and administration, the Eastern District of North Carolina should be allowed to decide." Mot. at 7. But that is just the point—this Court should permit it to decide that issue. Nevertheless, Nreal respectfully submits these facts to illustrate the weakness of Epic's jurisdictional allegations in the North Carolina case, and thus to demonstrate why this action should be stayed, rather than dismissed, so the parties can litigate here once the jurisdictional question is resolved in North Carolina. It is clear that the North Carolina court's authority to exercise personal jurisdiction over Tairuo is, at the very least, questionable. In the words of the Ninth Circuit in *Alltrade*, this North Carolina action "presents a likelihood of dismissal" on the question of personal jurisdiction. *Alltrade, Inc.*, 946 F.2d at 627-29. Thus, this case should be

stayed rather than dismissed.

### C. Likewise, This Case Should Not Be Transferred.

#### 1. *Epic fails to meet threshold requirements for transfer under 28 U.S.C. § 1404(a)—namely, establishing personal jurisdiction.*

In order to transfer this action to the Eastern District of North Carolina, Section 1404(a) must be satisfied. *See* 28 U.S.C. § 1404(a). This is true even if the first-to-file rule applies; the first-to-file rule does not negate the statutory requirement that "could only transfer this action to a district '*where it might have been brought*.'" *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018) (citing 28 U.S.C. § 1404(a)) (emphasis added). In other words, "[t]o support a motion to transfer under § 1404(a), the moving party must first show that the proposed transferee court possesses subject matter jurisdiction over the action, that the parties would be subject to personal jurisdiction in the transferee court, and that venue would have been proper in the transferee court." *Callaway Golf Co. v. Corp. Trade Inc.*, No. 09CV384 L(POR), 2010 WL 743829, at *5 (S.D. Cal. Mar. 1, 2010) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *A. J. Indus., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 386 (9th Cir. 1974)).

Here, Epic cannot show that Plaintiffs would be subject to personal jurisdiction in the Eastern District of North Carolina—indeed, personal jurisdiction over Tairuo does not exist. *See supra* Sec. III.A.1. And since Epic cannot make this showing, this Court should not find that the Eastern District of North Carolina is a district "where [this litigation] might have been brought." 28 U.S.C. § 1404(a). Thus, the threshold issue for transferring a case under § 1404(a) is not met, and this case should be stayed rather than transferred.

#### 2. *The convenience factors favor litigating in this district.*

Moreover, the traditional convenience factors considered under 28 U.S.C. § 1404(a) also favor staying this case rather than dismissing or transferring to North Carolina. This Court may consider the convenience factors here, despite Epic's contention that it cannot—in fact, Epic itself acknowledges that these factors are "*normally* be addressed by the court in the first-filed action," implying that there are instances in which the second-filed court does consider these factors, but Epic explicitly failed to address them here. Mot. at 7 (emphasis added). As Epic also notes, this

issue has been briefed in the Eastern District of North Carolina. There, Tairuo asserts the same arguments Plaintiffs assert here: each factor weighs in favor of litigating this case in the Northern District of California, not the Eastern District of North Carolina. Mot. at 7. In practice, Courts in this district and state have held that "[i]n resolving motions brought under the first-to-file rule, courts will often consider the convenience factors in 28 U.S.C. section 1404(a)." *SMIC, Americas v. Innovative Foundry Techs. LLC*, 473 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020); *see also, e.g.*, *Guthy-Renker-Fitness L.L.C. v. Icon Health & Fitness Inc.*, No. 97-7681 LGB (EX), 1998 WL 207855, at *8 (C.D. Cal. Mar. 16, 1998) ("A court may also relax the first-to-file rule "if the balance of convenience weighs in favor of the later-filed action" (citing *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994)).

"The party requesting the transfer bears the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum." *Callaway Golf Co.*, 2010 WL 743829, at *4 (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 255–56 (1981); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). Epic's undisputed failure to apply the convenience factors here means that they have failed to meet their burden under 28 U.S.C. § 1404(a). The court should thus not transfer this case as Epic requests.

### a. Plaintiffs' Choice of Venue

"Courts generally afford considerable weight to a plaintiff's choice of forum when deciding a motion to transfer. But if the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, the plaintiff's choice of forum is given considerably less weight." *Callaway Golf Co.*, 2010 WL 743829, at *5 (citations omitted). Plaintiffs' choice to file this action in the Northern District of California is based on the exact reasoning described in *Callaway*: both parties have a significant connection to this district. *See infra* Sec. III.A.2.b.ii. Conversely, if this same logic was applied to the North Carolina action, Epic's choice of forum should be given less deference because of the clear lack of connection between the defendant and the action and the Eastern District of North Carolina. Thus, Plaintiffs' choice here is entitled to more deference than Epic's choice of forum in North Carolina, and this factor weighs in favor of

litigating in this district.

### b.   Convenience of the Parties

"A defendant wishing to transfer an action must show that the burden on the plaintiff if the action is transferred is less than the burden on defendant if the action is not transferred." *Callaway Golf Co.*, 2010 WL 743829, at *6 (citations omitted). Here, both parties have connections to California, where only Epic has connections to North Carolina. To the extent that Plaintiffs have connections with any state, it is California—Nreal, Inc. is incorporated there, and Nreal has attended meetings and conferences there. Compl. ¶ 7; Xu Decl. ¶ 3. Any business records related to Plaintiffs, to the extent they are available in the United States, would be in California. Xu Decl. ¶ 3.c. As stated above, Tairuo and Nreal have no connection to North Carolina—no employees are there, no records are there. *See supra*, section III.B.; s*ee also* Xu Decl. ¶ 4. Given that Plaintiffs have yet to launch products in the United States and lack significant contacts in the country as a whole, it would be a significant inconvenience for them to litigate anywhere but California, where, even here, they have minimal connections.

Epic, on the other hand, has a significant connection to this district: it has offices in multiple cities in this district, including the San Francisco and Larkspur, Compl. ¶ 9, and it has filed lawsuits against other parties in this district. *See, e.g.*, *Epic Games, Inc. v. Apple Inc.*, No. 4:20-CV-05640-YGR (N.D. Cal. Aug. 13, 2020). Finally, at least a portion of primary counsel for both parties are located in California. Accordingly, it would not nearly as inconvenient for Epic to litigate in this district compared to the inconvenience Plaintiffs would suffer if they had to litigate in North Carolina—this factor weighs in favor of litigating in this district.

### c.   Convenience of the Witnesses

To demonstrate inconvenience, the moving party "should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action. "The court will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case." *Steelcase, Inc. v. Haworth, Inc.*, No. CV 96-1364-JGD-AJWX, 1996 WL 806026, at *3 (C.D. Cal. May 15, 1996). First and foremost, Epic as the moving party has not provided this

Court with any information regarding which district would be more convenient for the witnesses in this dispute. As such, Epic has failed to meet its burden, so this element should weigh against transfer. In addition, any potential third-party witnesses are likely to be located in California, not North Carolina. Thus, this factor weighs in favor of litigating in this district.

### d. Interests of Justice

The interests of justice favor litigating in the Northern District of California because all parties have consented to jurisdiction here. Requiring Tairuo to litigate in a state where it has no contacts and no specific connection violates the notions of fair play and substantial justice. Moreover, Epic will not be prejudiced if this action is litigated in California; Epic's causes of action in the North Carolina action can easily be incorporated into this action because they are based on the same set of operative facts. It is also worth noting that if the case is stayed, no judicial resources will be expended; this will simply allow this district, the proper district to hear this case, to pick up the case once the jurisdictional issue is decided in North Carolina.

### D. Epic Improperly Attempts to Incorporate Arguments from North Carolina Into This Action Through Judicial Notice.

Finally, Epic improperly attempts to incorporate argument from North Carolina into this action through its request that this Court take judicial notice of Exhibits 1-2, 5, 7-10 to the Declaration of Diana Torres ("Torres Declaration") in support of Epic's Motion to Dismiss or Transfer (Dkt. No. 22). These exhibits are court documents or exhibits filed in the United States District Court for the Eastern District of North Carolina. *Epic Games, Inc., v. Shenzhen Tairui Tech. Co. Ltd.*, No. 5:21-CV-00224-FL (E.D.N.C.). Plaintiffs oppose this attempt because this Court taking judicial notice of the briefing and argument therein would be contradictory to what Epic asserts is appropriate here: allowing the court of the first-filed action to rule on the issues before it. It would be contrary to Epic's deference to the North Carolina action for this Court to take judicial notice of the *facts and arguments* the North Carolina briefing in deciding whether to stay, dismiss, or transfer this case under the first-to-file rule.

While they are public records, Epic seeks to the North Carolina briefing to establish the truth of the facts therein, rather than merely for the existence of the documents. In fact, Epic

1  seeks to incorporate all of its arguments by reference through these exhibits, meaning the exhibits
2  are not proper subjects of judicial notice on Epic's Motion to Dismiss.  In contrast, Plaintiffs
3  submit a declaration herewith containing facts that illustrate why Epic's jurisdictional allegations
4  in North Carolina and arguments for dismissal or transfer of this action are flawed.  Accordingly,
5  Plaintiffs respectfully request that the Court deny Defendant's request for judicial notice of these
6  exhibits, or alternatively, limit their review to the appropriate scope—their mere existence.

7  In considering a motion to dismiss, a court's "review is limited to the complaint." *Lee v.
8  City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citations and quotations omitted).
9  However, a court may take judicial notice of a document "if the complaint specifically refers to
10 the document and if its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 454 453
11 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119
12 (9th Cir. 2002).

13 When taking judicial notice of a document on a Rule 12(b)(6) motion, a court may do so
14 "not for the truth of the facts recited therein, but for the existence of the [document], which is not
15 subject to reasonable dispute." *Lee*, 250 F.3d at 689-90 (reversible error to take judicial notice of
16 the "truth" of "*disputed* facts stated in public records,"). *Id*. (emphasis in original); *see also*
17 *Harris v. R.J. Reynolds Vapor Co.*, No. 15-CV-04075-JD, 2016 WL 6246415, at *3 (N.D. Cal.
18 Sept. 30, 2016) ("[B]ecause [the document] summarizes comments, rather than undisputed facts,
19 the Court will not take notice beyond the fact that it exists.").

20 Here, Epic requests that the Court take judicial notice of the briefing from an action in the
21 Eastern District of North Carolina, not merely for the existence of the briefs, but for the facts
22 therein.  This is improper.  First, Epic seeks judicial notice of documents not referenced in the
23 Complaint at all.  Indeed, the only document mentioned in Plaintiffs' complaint is Exhibit 1 to the
24 Torres Declaration, the Complaint, the remaining are not referenced in Plaintiffs' Complaint.
25 *Lee*, 250 F.3d at 688.

26 Moreover, Epic seeks to have the Court consider the purported truth of the advocacy
27 within these briefs.  *See*, e.g., Mot. at 7-8 ("Epic thus does not ask the Court to address these
28 factors but notes that, as reflected in Epic's filings in the North Carolina Action the forum non

conveniens factors show . . . Torres Decl., Exs. 7, 9, 10." and "Regardless, as Epic explained in its opposition to Nreal Shenzhen's motion to dismiss . . . *See* Torres Decl., Exs. 7, 9, 10."). Epic essentially incorporates pages upon pages of argument from briefing in another Court into its Motion to Dismiss. This is an inappropriate use of judicial notice. This Court should not consider these documents. *Harris*, 2016 WL 6246415, at *2 ("Courts may not take judicial notice of facts that are subject to reasonable dispute."); *Lee*, 250 F.3d at 689-90 (reversible error to take judicial notice of the "truth" of "*disputed* facts stated in public records") (emphasis in original); *see also Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 970 fn. 9 (N.D. Cal. 2017) (taking judicial notice of letters filed in various cases cited by defendants, but considering the letters "for their form only, and not for the truth of the matters asserted within"). Epic's request should be denied.

Alternatively, if the Court grants judicial notice of these exhibits, its review should be limited to the existence of the documents, not the truth of the facts recited therein. *Lee*, 250 F.3d at 689-90. Under such an appropriately limited scope of review, the documents show that there is a current motion that has been filed and fully briefed in the Eastern District of North Carolina to dismiss that action or transfer it here to this Court. The existence of that motion supports Nreal's Opposition to Epic's Motion to Dismiss this litigation, because it shows that there is a real chance that the North Carolina action could be dismissed. As a result, this action should be stayed pending the determination of the motion previously filed in the Eastern District of North Carolina.

### IV.  CONCLUSION

For the reasons stated herein, this Court should stay this action pending resolution of the jurisdictional question in North Carolina rather than dismiss it or transfer it to the Eastern District of North Carolina. This would not only comport with case law and statutory requirements but would also be the prudent and just result for all parties. Furthermore, Plaintiffs' respectfully request that the Court deny Epic's Request for Judicial Notice of Exhibits 1-2, 5, 7-10 or its review should be limited to the existence of the documents, not the truth of the facts recited therein.

Dated: October 12, 2021

DIANA M. RUTOWSKI
MARIA N. SOKOVA
Orrick, Herrington & Sutcliffe LLP

By: _____*/s/ Diana M. Rutowski*_____
　　　　　DIANA M. RUTOWSKI

Attorneys for Plaintiffs