Dale M. Cendali (SBN 1969070)
dale.cendali@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Diana M. Torres (SBN 162284)
diana.torres@kirkland.com
Lauren J. Schweitzer (SBN 301654)
lauren.schweitzer@kirkland.com
2049 Century Park East
Los Angeles, CA  90067
Telephone:    (310) 552-4200
Facsimile:    (310) 552-5900

*Attorneys for Defendant Epic Games, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NREAL TECHNOLOGY LTD., NREAL INC., AND SHENZHEN TAIRUO TECHNOLOGY CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> EPIC GAMES, INC., <br><br> Defendant. | Case No. 5:21-cv-05537-BLF <br><br> Hon. Beth Labson Freeman <br><br> **DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DISMISS COMPLAINT OR TRANSFER** <br><br> Date:   February 24, 2022 <br> Time:   9:00 A.M. <br> Courtroom: 3, 5th Floor <br><br> Complaint Filed Date: July 20, 2021 |

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. This Case Should Be Dismissed Because the First-to-File Rule Undisputedly Applies to this Second-Filed Action ................................................................... 2

        *1. Nreal Shenzhen Is Subject to Jurisdiction in North Carolina Because It Expressly Aimed Its Tortious Conduct at North Carolina* ............................... 3

        *2. Nreal Shenzhen Is Subject to Jurisdiction in North Carolina Because It Has Sufficient Minimum Contacts* .................................................................. 5

        *3. Nreal Shenzhen Is Subject to Jurisdiction in North Carolina Under Rule 4(k)(2) Because It Has Sufficient Minimum Contacts with the United States* ............................................................................................... 6

    B. Alternatively this Case Should Be Transferred to the Eastern District of North Carolina ................................................................................................................ 7

        *1. North Carolina Is a Forum Where this Action Might Have Been Brought* ................................................................................................................. 7

        *2. The Convenience Factors Are Inapplicable and Favor Transfer* ..................... 7

III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. J. Indus., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*,
  503 F.2d 384 (9th Cir. 1974) ...................................................................................................8

*Alltrade, Inc. v. Uniweld Prod., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ...................................................................................................3

*In re Bozic*,
  888 F.3d 1048 (9th Cir. 2018) .................................................................................................8

*Calder v. Jones*,
  465 U.S. 783 (1984)..................................................................................................................4

*Callaway Golf Co. v. Corp. Trade Inc.*,
  No. 09cv384 .........................................................................................................................8, 9

*Gates Learjet Corp. v. Jensen*,
  743 F.2d 1325 (9th Cir. 1984) ...............................................................................................10

*Guthy-Renker-Fitness L.L.C. v. Icon Health & Fitness Inc.*,
  No. 97-7681 LGB (EX), 1998 WL 207855 (C.D. Cal. Mar. 16, 1998)....................................8

*Heber v. Toyota Motor Sales U.S.A., Inc.*,
  No. SACV 16-01525..................................................................................................................7

*Imageline, Inc. v. Mintskovsky*,
  No. CV 09-01869 SJO, 2009 WL 10672787 (C.D. Cal. June 16, 2009)..................................6

*It's My Seat, Inc. v. Hartford Cap. LLC*,
  No. 2:20-cv-06378-ODW, 2021 WL 1200042 (C.D. Cal. Mar. 30, 2021)..............................5

*Italian Colors Rest. v. Am. Express Co.*,
  No. C 03-3719 SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003).........................................9

*Jefferson Ward Stores, Inc. v. Doody Co.*,
  560 F. Supp. 35 (E.D. Pa. 1983) ..............................................................................................3

*Kutob v. L.A. Ins. Agency Franchising, LLC*,
  No. 2:18-cv-01505-APG-PAL, 2018 WL 4286171 (D. Nev. Sept. 7, 2018) ...........................7

*Monster Cable Prod., Inc. v. Euroflex S.R.L.*,
  642 F. Supp. 2d 1001 (N.D. Cal. 2009) ...................................................................................6

*Pakootas v. Teck Cominco Metals, Ltd.*,
   905 F.3d 565 (9th Cir. 2018) .................................................................................................5

*Perry v. Brown*,
   No. CV 18-9543-JFW(SSx), 2019 WL 1452911 (C.D. Cal. March 13, 2019) .........................5

*SMIC, Americas v. Innovative Foundry Techs. LLC*,
   473 F. Supp. 3d 1021 (N.D. Cal. 2020) ...................................................................................8

*Sporn v. TransUnion Interactive, Inc.*,
   No. 18-cv-05424-YGR, 2019 WL 151575 (N.D. Cal. Jan. 10, 2019) ......................................8

*Ward v. Follett Corp.*,
   158 F.R.D. 645 (N.D. Cal. 1994) .............................................................................................9

*Young v. L'Oreal USA, Inc.*,
   No. 20-cv-00944-JSW, 2021 WL 3235855 (N.D. Cal. Jan. 15, 2021) .....................................8

**Statutes**

28 U.S.C. § 1404(a) .......................................................................................................................7, 8

**Rules**

Fed. R. Civ. P. 4(k)(2)..................................................................................................................3, 6

iii

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION            CASE NO. 5:21-cv-05537-BLF
TO DISMISS COMPLAINT OR TRANSFER

## I. INTRODUCTION

Nreal's Opposition is most notable for what it does ***not*** say: Nreal does not deny that Epic filed the North Carolina action first or that the North Carolina Action involves substantially the same issues and parties. Nor does Nreal deny that the first-to-file rule applies.[1] By asking this Court to stay this action pending resolution of Nreal Shenzhen's motion to dismiss the North Carolina Action, Nreal concedes that the first-to-file rule applies and that its suit is barred. In addition, Nreal's request for a stay (rather than arguing that the filing of this suit was permissible) shows that this case was filed solely to aid Nreal Shenzhen's motion to dismiss in North Carolina. Moreover, while Nreal argues that this case belongs in California because Nreal, Inc. is incorporated here, Nreal, Inc. does not own the application for the alleged NREAL Mark at issue and is simply a recently-created entity that offers no evidence of what it actually does (let alone that it has any activities relevant to this case). While Epic agrees with Nreal that this case should not move forward, it should be dismissed or transferred, rather than stayed. Nreal should not be allowed to maintain an improperly filed action, forcing Epic to expend resources outside its chosen home forum or to use legal maneuvering to put itself in the position of plaintiff. It is Epic that filed the first suit (months before Nreal filed this suit) and Epic that seeks to vindicate its rights.

## II. ARGUMENT

It is undisputed that the first-to-file rule applies to this case, that this is the second-filed action, and that this case should not go forward while Epic's first-filed North Carolina action proceeds. The only dispute is whether the case should be stayed, dismissed, or transferred. For the reasons discussed below, this second-filed case should be dismissed or transferred.

---

[1] Nreal devotes much of its Opposition to discussing the merits of Epic's trademark claims. The merits of Epic's claims are not presently before the Court and thus Epic does not address these arguments save to say that Epic strongly disagrees with Nreal's positions: the trademarks look and sound highly similar, have the same meaning, are being used for the same and related goods and services, and are being marketed to the same or similar consumers in the same or similar marketing channels.

A. **This Case Should Be Dismissed Because the First-to-File Rule Undisputedly Applies to this Second-Filed Action**

Nreal does not dispute that, but for arguments relating to the North Carolina court's jurisdiction or convenience, this case should be dismissed under the first-to-file rule. Instead, it argues that this Court should use its discretion and allow Nreal to maintain this second-filed action while the parties await the North Carolina court's ruling on Nreal Shenzhen's jurisdictional and convenience challenge. Nreal is wrong.

Nreal filed this case to avoid facing Epic in its rightfully-chosen home forum and to *try* to manufacture a dispute about jurisdiction in North Carolina: Nreal waited two months *after* Epic filed the North Carolina Action against Nreal Shenzhen before filing this case. *Compare* Dkt. 1 *with* Dkt. 22-2. It then caused the North Carolina court to delay Nreal Shenzhen's deadline to respond to Epic's complaint in that forum. Immediately before filing its response, Nreal Shenzhen filed this action (adding as a party its California corporate relative), and then used this action as a basis for moving to dismiss or transfer the North Carolina Action. Dkt. 22 at 3-4 (citing sources). In its motion, the *only* concrete facts that Nreal Shenzhen presented as a basis for dismissing or transferring the North Carolina Action (other than Nreal Shenzhen's Chinese residence) were the existence of its newly-created (January 2021) California corporate relative (Nreal, Inc.)—which does *not* own the NREAL Mark application and says nothing about its own activities—and the fact that it filed this suit. *See* Dkt. 22-3 at 16–28. Nreal Shenzhen otherwise presented conclusory and vague allegations that it had "minimal" contacts with California, including that its two corporate relatives (the other Plaintiffs in this action)—*not* Nreal Shenzhen—attended unspecified conferences, events and meetings in California and that *if* Nreal had relevant witnesses and documents in the United States they *would* be in California. Dkt. 22-3 at 8, 27. Nreal Shenzhen also offered no evidence or even argument that Nreal, Inc. actually *did* anything relevant in California other than be incorporated. *See generally* 22-3 & 22-9.

When Epic moved to dismiss this case as barred by the first-to-file rule, Nreal effectively conceded that the case should not proceed without making any effort to argue otherwise or justify its

filing of this case while the North Carolina case was pending. *See* Opp. at 6–8. It simply asked this Court to use its discretion to stay the case, thus allowing Nreal to keep its position as plaintiff and a case open in its preferred forum. Were this permissible, any defendant could bolster its chances of overriding a plaintiff's chosen forum by forming a corporate entity in a forum of its liking and joining with it to file a new declaratory relief action. That is not the law. Nreal's request to keep an improperly filed action on this Court's docket is gamesmanship and should not be countenanced.

Moreover, the authority on which Nreal bases its argument seeking a stay over outright dismissal is inapt. Nreal relies on authority holding that a second-filed case should be stayed (rather than dismissed) when jurisdiction in the first-filed court is truly uncertain *for reasons other than its own second filed complaint and post-dispute conduct (such as the creation of a new subsidiary in the second-filed forum)*. *See Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628–29 (9th Cir. 1991) (later-filed action should be stayed rather than dismissed where subject matter jurisdiction in first-filed action uncertain); *see also Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35, 36 (E.D. Pa. 1983) (addressing case where there was a "significant possibility" that the first-filed court lacked jurisdiction). Moreover, the Ninth Circuit explicitly declined to follow *Jefferson Ward Stores*' finding that a later-filed action should be allowed to proceed without a stay. *See Alltrade*, 946 F.2d at 628–29. Regardless, that issue is not present here as North Carolina certainly has jurisdiction over Nreal Shenzhen, whose primary argument against jurisdiction in North Carolina is *its filing of this lawsuit*. Jurisdiction lies in North Carolina for at least three reasons: (1) Nreal Shenzhen expressly aimed its tortious conduct at North Carolina; (2) Nreal Shenzhen has sufficient minimum contacts with North Carolina; and (3) even if Nreal Shenzhen lacks sufficient minimum contacts with North Carolina, it is subject to jurisdiction there pursuant to Federal Rule of Civil Procedure 4(k)(2).

1. *Nreal Shenzhen Is Subject to Jurisdiction in North Carolina Because It Expressly Aimed Its Tortious Conduct at North Carolina*

Nreal Shenzhen is subject to jurisdiction in North Carolina under the *Calder* "effects test." *See Calder v. Jones*, 465 U.S. 783, 789–90 (1984). This test is satisfied here where Nreal Shenzhen committed an intentional act expressly aimed at North Carolina that caused harm it knew would

3

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION           CASE NO. 5:21-cv-05537-BLF
TO DISMISS COMPLAINT OR TRANSFER

likely be suffered in North Carolina. *Id.* Nreal Shenzhen committed intentional torts, including trademark infringement and unfair competition. And, as Nreal Shenzhen knew would happen (given its knowledge that Epic resided in North Carolina), Epic felt the brunt of the harm from Nreal Shenzhen's conduct in North Carolina, its home forum. (*See* Declaration of Nick Whiting ("Whiting Decl.") ¶ 3; Declaration of Christopher Thomas ("Thomas Decl.") ¶¶ 7–20.)[2]

Nreal Shenzhen also expressly aimed its tortious conduct at North Carolina, including by: infringing Epic's trademark with knowledge that Epic was based in North Carolina; communicating with Epic's counsel in North Carolina; launching products bearing the infringing Nreal Mark and offering them to consumers throughout the United States (including North Carolina); promising the community (including North Carolina residents) its products would be compatible with Unreal Engine (Epic's product bearing Epic's trademarks at issue); offering an interactive website available in North Carolina; and entering the End User License Agreement ("Unreal Engine EULA") for Unreal Engine,[3] which expressly states it is entered in North Carolina. *Perry v. Brown*, No. CV 18-

---

[2] Nreal argues that Epic improperly asked this Court to take judicial notice of the North Carolina filings. Nreal is wrong. Epic asked the Court to take notice of those filings to evidence the fact that certain orders and filings were made in the North Carolina Action and to show the arguments pending before the North Carolina court—all purposes for which these documents are properly noticeable. Epic expressly noted that issues relating to North Carolina's convenience and jurisdiction are not before this Court. But, in its Opposition, Nreal raised arguments regarding both. To provide the Court with the full context, Epic submits with this Reply declarations and exhibits relating to Nreal's relevant dealings with Epic, Nreal's contacts with North Carolina, the location of relevant witnesses, and North Carolina's convenience. These declarations and exhibits are substantively identical to what Epic submitted in the North Carolina Action.

[3] In the North Carolina Action and its Opposition, Nreal pointed to the fact that the Unreal Engine EULA was entered with Epic's Swiss corporate relative. But this does not change the fact that it is a contact with North Carolina related to Epic's claims.

9543-JFW(SSx), 2019 WL 1452911, at *7 (C.D. Cal. March 13, 2019) (jurisdiction established where defendant knowingly infringed mark owned by forum resident), *aff'd and remanded*, 791 F. App'x 643 (9th Cir. 2019); *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577-78 (9th Cir. 2018) (jurisdiction over non-resident who dumped waste outside of forum state but knew brunt of the harm would be suffered in forum); (Whiting Decl., Ex. A at ¶¶ 7, 14; Thomas Decl. ¶¶ 4, 14–21, Ex. A at 10, 12, 14, 17, 20, 23, 26, 29, Ex. F; Supplemental Declaration of Diana Torres ("Suppl. Torres Decl.") ¶¶ 14 & 15, Exs. 1, 4, 6, 9–16).

Finally, Nreal Shenzhen offers no evidence or argument indicating that jurisdiction in North Carolina would be unreasonable. Nor can it. The exercise of jurisdiction is reasonable because Nreal Shenzhen purposefully injected itself in North Carolina by infringing a forum resident's trademark, North Carolina has a strong interest in adjudicating this dispute involving harm to a forum resident, and it is the most efficient judicial forum for resolution. *Perry*, 2019 WL 1452911, at *7 (jurisdiction reasonable where defendant knowingly infringed forum resident's mark and forum thus had a "paramount" interest in resolving dispute). Jurisdiction thus lies in North Carolina.

### 2.    *Nreal Shenzhen Is Subject to Jurisdiction in North Carolina Because It Has Sufficient Minimum Contacts*

Nreal Shenzhen is also subject to jurisdiction in North Carolina because it has sufficient minimum contacts with North Carolina. As discussed above, Nreal Shenzhen dealt with Epic and its counsel in North Carolina, offered products bearing infringing trademarks for sale to North Carolina residents, and entered the Unreal Engine EULA expressly stating that it was made in North Carolina. *See supra* at 4-5; *It's My Seat, Inc. v. Hartford Cap. LLC*, No. 2:20-cv-06378-ODW (AFMx), 2021 WL 1200042, at *5 (C.D. Cal. Mar. 30, 2021) (jurisdiction existed over defendant who had phone calls and written correspondence with plaintiff's principal in forum but no physical entry into forum). Nreal Shenzhen also owns a highly interactive website available to North Carolina residents that allows them to sign up for an account, download a software development kit, and purchase a hardware-based dev kit. *See Imageline, Inc. v. Mintskovsky*, No. CV 09-01869 SJO (JCx), 2009 WL 10672787, at *4 (C.D. Cal. June 16, 2009) (jurisdiction established by defendant's interactive

5

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION         CASE NO. 5:21-cv-05537-BLF
TO DISMISS COMPLAINT OR TRANSFER

1  website); (Suppl. Torres Decl., Exs. 5–6, 25–27, 32; Chatham Dec. ¶ 3).  These contacts suffice to
2  subject Nreal Shenzhen to jurisdiction in North Carolina.

3    3. *Nreal Shenzhen Is Subject to Jurisdiction in North Carolina Under Rule 4(k)(2) Because It Has Sufficient Minimum Contacts with the United States*
4

5  If all of the above were not sufficient to establish jurisdiction in North Carolina (it is), Nreal
6  Shenzhen would be subject to jurisdiction in North Carolina under Federal Rule of Civil Procedure
7  4(k)(2).  That Rule applies where a defendant has sufficient ties with the United States as a whole
8  but there is no specific forum state in which jurisdiction lies.  Fed. R. Civ. P. 4(k)(2).  Additionally,
9  the fact that Nreal Shenzhen applied for and defended the NREAL Mark in the U.S. Patent &
10 Trademark Office ("PTO") also establishes the propriety of U.S. jurisdiction.  *Id.* at 1007–10 (N.D.
11 Cal. 2009) (trademark registration with PTO sufficed to show jurisdiction under Rule 4(k)(2)).
12 Thus, the contacts described above show constitutionally sufficient ties with the United States as a
13 whole, even if Nreal Shenzhen is not subject to jurisdiction in any particular forum, and thus Epic
14 may properly bring suit in the forum of its choice, *i.e.*, North Carolina.  *Monster Cable Prod., Inc. v.*
15 *Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009) (jurisdiction established where
16 company had substantial contacts with United States though not directly with forum).

17  The sufficiency of these facts is not in dispute, nor does Nreal argue otherwise.  Instead,
18 Nreal argues that Rule 4(k)(2) does not apply because Nreal Shenzhen is subject to jurisdiction in
19 California (and thus Rule 4(k)(2)'s requirement that there be no specific state with jurisdiction is not
20 met).  Nreal asserts that jurisdiction lies in California because its newly-formed corporate relative,
21 Nreal, Inc., is incorporated there, employees of one of the Nreal entities (Nreal does not specify
22 which) went to a Game Developers' conference there, and Nreal Shenzhen consented to California's
23 jurisdiction by filing this suit.  But Nreal Shenzhen cannot rely on its' corporate relatives' forum
24 contacts and there is no evidence that any Nreal Shenzhen employee visited California.  *See* Xu
25 Decl. ¶3; *see Heber v. Toyota Motor Sales U.S.A., Inc.*, No. SACV 16-01525 AG (JCGx), 2018 WL
26 3104612, at *3 (C.D. Cal. June 11, 2018) (declining to impute forum contacts of one corporate
27 relative to another, *aff'd in part, rev'd in part on other grounds* 823 F. App'x 512 (9th Cir. 2020).
28

Nreal Shenzhen's filing of this suit is similarly unavailing because it undisputedly occurred *after* Epic filed the North Carolina Action. And, Nreal's reliance on this last fact—*i.e.*, the fact that it filed suit here—as a basis to attack jurisdiction in North Carolina effectively confirms that it filed this lawsuit for the purpose of trying to avoid jurisdiction in North Carolina.

\* \* \*

In sum, the first-to-file rule applies, the North Carolina Action is undisputedly the first-filed action, and the only "uncertainty" surrounding the North Carolina court's jurisdiction over Nreal Shenzhen is a manufactured one arising from Nreal Shenzhen's filing of this action. Such gamesmanship should not be countenanced. This case should be dismissed.

**B.   Alternatively this Case Should Be Transferred to the Eastern District of North Carolina**

Nreal argues that this case should not be transferred because (a) North Carolina is not a forum where the action "might have been brought"; and (b) the convenience factors allegedly favor California. Nreal's arguments fail.

*1.   North Carolina Is a Forum Where this Action Might Have Been Brought*

North Carolina is a forum where this action might have been brought because Epic resides in North Carolina and is subject to its jurisdiction. In its Opposition, Nreal improperly focuses on North Carolina's jurisdiction over Nreal. Nreal is the ***plaintiff*** in this action and the appropriate inquiry under 28 U.S.C. § 1404(a) is whether the transferee forum has personal jurisdiction over the ***defendant*** (*i.e.*, Epic). *See Kutob v. L.A. Ins. Agency Franchising, LLC*, No. 2:18-cv-01505-APG-PAL, 2018 WL 4286171, at *3 (D. Nev. Sept. 7, 2018) (analyzing whether first-filed forum had jurisdiction over defendant in second filed case).

*2.   The Convenience Factors Are Inapplicable and Favor Transfer*

Additionally, the § 1404(a) convenience factors are inapplicable and, in any event, favor transfer. As a preliminary matter, the Ninth Circuit authority on which Nreal relies establishes only that a transferring Court must assess whether the transferee forum is one where the action might have been brought—not that it must apply the convenience factors. *See In re Bozic*, 888 F.3d 1048,

7

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION   CASE NO. 5:21-cv-05537-BLF
TO DISMISS COMPLAINT OR TRANSFER

1054 (9th Cir. 2018) (addressing transfer of putative class action to district where similar class action was pending).  The other district court cases Nreal cites stand for the proposition that a court *may* choose to consider the § 1404(a) convenience factors but *none of those courts allowed those factors to override the first-to-file rule except where the first-filed case was a declaratory relief action*, which is not the case here.  *SMIC, Americas v. Innovative Foundry Techs. LLC*, 473 F. Supp. 3d 1021 (N.D. Cal. 2020) (granting defendant's motion to dismiss later-filed declaratory relief action under first-to-file rule because of earlier-filed infringement action); *Guthy-Renker-Fitness L.L.C. v. Icon Health & Fitness Inc.*, No. 97-7681 LGB (EX), 1998 WL 207855 (C.D. Cal. Mar. 16, 1998) (addressing first-filed case and applying first-to-file rule in that case's favor where defendant filed suit in a different jurisdiction the day after being served with the first-filed complaint); *Callaway Golf Co. v. Corp. Trade Inc.*, No. 09cv384 L(POR), 2010 WL 743829, at *5 (S.D. Cal. Mar. 1, 2010) (addressing convenience factors in assessing whether exception to first-to-file rule applied and transferring first-filed declaratory relief action to venue where first-filed case defendant's breach of contract and unjust enrichment action was pending).[4]  And, judges in this district have transferred cases under the first-to-file rule without considering the § 1404(a) factors.  *See, e.g.*, *Young v. L'Oreal USA, Inc.*, No. 20-cv-00944-JSW, 2021 WL 3235855, at *6 (N.D. Cal. Jan. 15, 2021) (transferring case under first-to-file rule without considering § 1404(a) factors and noting, "the issue of convenience is one that should be addressed by the court in the first-filed action"); *Sporn v. TransUnion Interactive, Inc.*, No. 18-cv-05424-YGR, 2019 WL 151575, at *4 (N.D. Cal. Jan. 10, 2019) *quoting Ward v. Follett Cor*p., 158 F.R.D. 645, 648 (N.D. Cal. 1994) ("The Ninth Circuit has cautioned that relaxing the first-to-file rule on the basis of conveniences is a determination best left to the court in the first-to-file action.")

Even if the transfer factors do *apply*, they each favor transferring this action to North Carolina:

---

[4] Nreal's reliance on *A. J. Indus., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384 (9th Cir. 1974), is inapt because that case does not address a motion to transfer under the first-to-file rule.

*First*, there is minimal (if any) deference afforded to Nreal's choice of forum because the transactions giving rise to this action lack a significant connection to California. *See Callaway Golf Co. v. Corp. Trade Inc.*, No. 09cv384 L(POR), 2010 WL 743829 (S.D. Cal. Mar. 1, 2010) (affording declaratory relief Plaintiff's choice of forum minimal weight where transactions giving rise to action lacked significant connection to forum). Nreal again focuses on the wrong inquiry. Instead of examining the connection between the transactions giving rise to the action, it focuses on the parties' connections to the forum. *Id.*

*Second*, the parties' convenience favors transfer. Epic is based in North Carolina and that is the more convenient forum for the majority of its relevant witnesses. (Declaration of Jodie Anderson ("Anderson Decl.") ¶¶ 3–5.) In contrast, Nreal asserts that it has only "minimal" connections to California. Opp. at 11. And even though Nreal, Inc. is incorporated in California, it is a recently-formed company with no indication of what, if anything, it actually has done or does presently, it is not the owner of the trademark application at issue in this dispute and the other two Plaintiffs are based in China. Dkt. 1 ¶¶ 6 & 8. Moreover, Nreal submits no evidence indicating that it has any relevant documents or personnel located in California. Instead, it submits a carefully worded declaration—executed in China—from Nreal's founder, Chi Xu stating that *if* any Nreal witnesses or business records were available in the United States, they *would* be in California. Dkt. 28-1 ¶ 3(c). Nreal also points to the fact that Epic has offices in California and has litigated unrelated cases here in the past. But that is entirely irrelevant to whether this is a more convenient forum given the issues and the witnesses *in this case*. *Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) (granting motion to transfer and recognizing there is "no source of law which instructs the Court to count unrelated lawsuits as contacts for the purposes of determining venue").

*Third*, the witnesses' convenience also favors transfer. Epic's key witnesses regarding its selection and use of the UNREAL Marks at issue are located in North Carolina. (Anderson Decl. ¶¶ 3–5.) In contrast, Nreal submits no evidence that any party witnesses are located in California. And, though it argues that unspecified *potential* third-party witnesses are *likely* to be located in California,

9

it offers no evidence showing that.[5]

***Fourth***, the interests of justice also favor transfer. North Carolina has a much greater interest in this dispute, which pertains to the infringement of a North Carolina resident's trademarks which caused and is causing harm felt in North Carolina. *See Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1333 (9th Cir. 1984) (finding "Arizona has a strong interest in ensuring that its citizens are fully compensated for their injuries, in part to protect the state's economic resources from unnecessary expenditures"). Nreal's conclusory argument that requiring Nreal Shenzhen to litigate in North Carolina offends notions of fair play and justice is wrong. As discussed above, Nreal Shenzhen expressly aimed its tortious conduct at North Carolina and has sufficient minimum contacts in that forum. And, contrary to Nreal's argument, judicial and party resources will be wasted if this case is stayed rather than being dismissed or transferred. If the case is stayed, then the parties will need to submit additional filings for the Court to consider when Nreal Shenzhen's motion to dismiss the North Carolina action is denied. In contrast, if the case is dismissed or transferred, then the North Carolina court's decision will not require additional motion practice before this Court.

## III.    CONCLUSION

For the reasons stated above and in Defendant's motion, this case should be dismissed or transferred.

DATED: October 19, 2021         KIRKLAND & ELLIS LLP

*/s/ Diana M. Torres*
Diana M. Torres

---

[5] Nreal also accuses Epic of failing to submit evidence regarding the location of relevant witnesses, but Nreal is wrong. Epic submitted the Declaration of Jodie Anderson (which addresses this issue) as part of its Request for Judicial Notice. *See* Dkt. 22-11.

Dale M. Cendali
dale.cendali@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Diana M. Torres (SBN 162284)
diana.torres@kirkland.com
Lauren J. Schweitzer (SBN 301654)
lauren.schweitzer@kirkland.com
2049 Century Park East
Los Angeles, CA  90067
Telephone:     (310) 552-4200
Facsimile:      (310) 552-5900

Attorneys for Defendant Epic Games, Inc.

# CERTIFICATE OF SERVICE

☒   I hereby certify that I have electronically filed the foregoing **DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DISMISS COMPLAINT OR TRANSFER** with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to the following counsel of record:

Diana M. Rutowski
drutowski@orrick.com
Maria N. Sokova
msokova@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     (650)     614-7400
Facsimile:     (650) 614-7401


Dated: October 19, 2021            */s/ Diana M. Torres*
                                    Diana M. Torres

                                    Attorney for Defendant Epic Games, Inc.